IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**VICKI LAWSON,**
**Claimant Below, Petitioner**

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-363**          (JCN: 2022012862)

**SERVICE CLEANERS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Vicki Lawson appeals the August 16, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Service Cleaners, Inc. ("SC") filed a response.[1] Ms. Lawson did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which granted Ms. Lawson a 0% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 8, 2021, Ms. Lawson filed a workers' compensation claim for an occupational injury that occurred while she was employed by SC. On January 11, 2022, the claim administrator issued an order holding the claim compensable for sprain of the left knee.[2] Ms. Lawson reported that she was coming down some steps on November 8, 2021, when she slipped on a plastic bag and fell, landing on her left knee.

Ms. Lawson was seen by Angela Akers, FNP, at Bluestone Health Center, on March 28, 2022, for left knee pain and swelling. Ms. Lawson reported that she had been having pain and swelling in her left knee since she fell and landed on her knee in October. Physical examination of the left knee revealed tenderness on palpation; however, FNP Akers noted

---

[1] Ms. Lawson is represented by Gregory S. Prudich, Esq. SC is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

[2] Prior to the compensable injury, between 2017 and 2022, Ms. Lawson was treated by William Bird, M.D., for Type 2 diabetes mellitus with manifestations and unspecified complications, Type 2 diabetes mellitus with diabetic neuropathy, restless leg syndrome, osteoarthritis, peripheral neuropathy, and chronic pain.

no evidence of swelling or decreased range of motion. FNP Akers' assessment was pain in left knee.

On June 2, 2022, Ms. Lawson was seen by Matthew Haag, D.O., at Bluestone Health Center. Ms. Lawson reported left knee pain due to a work-related fall in late 2021. Physical examination revealed some trace peripatellar edema in the left knee and a positive patellar compression test. Dr. Haag diagnosed Ms. Lawson with pain in the left knee and Type 2 diabetes mellitus, and he recommended an orthopedic consultation. Ms. Lawson followed up with Dr. Haag on July 8, 2022. Dr. Haag noted that x-rays of the left knee performed in March were unremarkable; however, Ms. Lawson continued to complain of unresolved left knee pain. Physical examination revealed trace left knee peripatellar edema, increased tibial tuberosity prominence, and a positive patellar compression test. Dr. Haag diagnosed Ms. Lawson with chondromalacia of the patella of the left knee and contusion of the left knee, and he requested authorization for an orthopedic consultation.

Joseph Grady, M.D., performed an evaluation of Ms. Lawson on August 22, 2022. Ms. Lawson reported that she developed pain in her left knee following the compensable injury. Ms. Lawson complained of an intermittent burning sensation in the left knee, but she denied any locking or dislocation of the left knee. Dr. Grady noted that all of Ms. Lawson's left knee x-rays were normal, and none of the available medical reports documented any abnormal physical examination findings suggestive of internal derangement of the left knee. Dr. Grady's physical examination of the left knee revealed no evidence of tenderness, crepitus, laxity, or joint effusion. Dr. Grady noted that Ms. Lawson had full range of motion of the left knee. Visual inspection of the left knee revealed an asymmetrical vein on the anterior aspect of the left knee across the patella. A neurological examination of the left knee revealed normal muscle strength, normal reflexes, and normal pinprick sensation.

In the absence of any positive clinical findings regarding the left knee, Dr. Grady opined that it was doubtful that an orthopedic referral or an MRI would be particularly helpful. Dr. Grady further opined that Ms. Lawson's chronic symptoms may be related to her diabetic peripheral neuropathy. Dr. Grady found that the left knee sprain resulting from Ms. Lawson's November 8, 2021, work injury had reached maximum medical improvement ("MMI") and did not require any further treatment. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Grady found Ms. Lawson to have no ratable whole person impairment ("WPI") for her compensable left knee injury.

On September 16, 2022, Ms. Lawson was seen by Dr. Haag for persistent left knee pain. Physical examination of the left knee revealed peripatellar edema, increased tibial tuberosity prominence, a positive patellar compression test, and minimal joint line tenderness. The assessment was chondromalacia of the patella of the left knee, chronic

instability of the left knee, effusion of the left knee, contusion of the left knee, monoarthritis of the left knee, and traumatic arthropathy of the left knee.

On May 25, 2023, Victor Poletajev, D.C., performed an evaluation of Ms. Lawson's compensable injury. Chiropractor Poletajev found Ms. Lawson to have scarring on the left knee, range of motion deficits, and loss of muscle strength in her left knee. Chiropractor Poletajev found Ms. Lawson to be at MMI, and he assessed Ms. Lawson's WPI using the *Guides*. Chiropractor Poletajev found 8% WPI for range of motion loss in the left knee, 5% WPI for loss of muscle strength in flexion of the left knee, 5% WPI for loss of muscle strength in extension of the left knee, and 3% WPI for scarring of the left knee. Using the *Guides*' Combined Values Chart, Chiropractor Poletajev found Ms. Lawson to have a combined total of 19% WPI of the left knee. Chiropractor Poletajev included a photograph of Ms. Lawson's knee showing two, mostly linear, dark marks.

David Soulsby, M.D., performed an evaluation of Ms. Lawson on December 19, 2023. Dr. Soulsby found no evidence of effusion, range of motion deficits, or significant crepitation during motion. There was no evidence of scarring or atrophy in the left knee or lower extremity, and neurological examination revealed no discernible difference in muscle strength between the right and left lower extremities. Dr. Soulsby diagnosed Ms. Lawson with a left knee sprain, patella tendinosis of the left knee, and diabetes mellitus with diabetic polyneuropathy, but opined that only Ms. Lawson's left knee sprain was causally related to the compensable injury. Dr. Soulsby found Ms. Lawson's compensable left knee sprain to be at MMI and in need of no further medical treatment. Dr. Soulsby found Ms. Lawson to have no ratable whole person impairment under the *Guides* for her compensable left knee sprain injury.

Dr. Soulsby reviewed the report of Chiropractor Poletajev and stated that he disagreed with the findings. Dr. Soulsby noted that Chiropractor Poletajev found scarring, loss of range of motion, and muscular weakness that neither he nor Dr. Grady found during their examinations. Dr. Soulsby commented that when he examined Ms. Lawson, her knee looked the same as it did in the photograph included with Chiropractor Poletajev's report. Dr. Soulsby opined that there was a prominent vein over the anterior aspect of the patella, but he did not find any scarring. Dr. Soulsby stated that "if any of the findings documented [by Chiropractor Poletajev] were actually present then the methods utilized would be accurate; however, because none of these findings can be demonstrated the conclusions are not valid."

On August 16, 2024, the Board affirmed the claim administrator's order granting Ms. Lawson a 0% PPD award. The Board found that Ms. Lawson failed to establish that she has any impairment related to the compensable injury. Ms. Lawson now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Ms. Lawson argues that she suffered a left knee injury causing chronic symptoms and there is no evidence that she had prior complaints or treatment related to her left knee. Ms. Lawson further argues that the Board failed to note that, although Chiropractor Poletajev's findings were not consistent with Drs. Grady and Soulsby, his findings were consistent with Dr. Haag. Finally, Ms. Lawson argues that the Board failed to make any determination regarding the credibility of Dr. Haag.

Here, the Board determined that Ms. Lawson failed to establish that she has any impairment related to the compensable injury. The Board found that the report of Chiropractor Poletajev is not reliable because it is against the weight of the medical evidence. The Board noted that Chiropractor Poletajev found impairment for loss of range of motion and scarring, while both Dr. Grady and Dr. Soulsby found no impairment.

Upon review, we conclude that the Board was not clearly wrong in finding that Ms. Lawson failed to establish that she has any impairment related to the compensable injury. Further, the Board was not clearly wrong in finding the report of Chiropractor Poletajev unreliable based on the medical evidence. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind,

4

we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order, which granted Ms. Lawson a 0% PPD award.

We find no merit in Ms. Lawson's arguments regarding the credibility of Dr Haag. We note that Dr. Haag did not offer an impairment rating for Ms. Lawson. Further, upon a review of the record, we do not find that Chiropractor Poletajev's findings are adequately supported by Dr. Haag's treatment records to the degree that it would create reversible error within the Board's order.

Accordingly, we affirm the Board's August 16, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

5